UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO. 08-22519-CIV-HOEVELER/GARBER

BANKFIRST, a South Dakota state bank,

    Plaintiff,

vs.

KOBI KARP, an individual,

    Defendant.

_____/

**DEFENDANT'S AMENDED ANSWER
AND AFFIRMATIVE DEFENSES**

Defendant Kobi Karp ("***Defendant***") files this Amended Answer and Affirmative Defenses and responds to the averments contained in Plaintiff BankFirst's ("***Plaintiff***") Complaint For Breach of Guaranty and Demand For Jury Trial (the "***Complaint***"). All allegations not specifically admitted are hereby denied.

**JURISDICTION AND VENUE**

1. Defendant denies the allegations contained in Paragraph 1 of the Complaint except to admit that Plaintiff purports to confer jurisdiction on this Court pursuant to 28 U.S.C. §1332(a).

2. Defendant denies the allegations contained in Paragraph 2 of the Complaint except to admit that Plaintiff purports to assert venue pursuant to 28 U.S.C. §1391.

**PARTIES**

3. Defendant is without sufficient knowledge of the allegations contained in Paragraph 3 of the Complaint and therefore they are denied.

4. Defendant admits the allegations of Paragraph 4 of the Complaint, except that Defendant denies that he is a principal in Kobi Karp Architecture & Interior ("***KKAI*** "). Defendant admits that he is a principal of Kobi Karp Architecture & Interior Design, Inc. ("**KKAID**").

## GENERAL ALLEGATIONS

I. **The Beach House Project**

5. Defendant is without sufficient knowledge of the allegations contained in Paragraph 5 of the Complaint and therefore they are denied. Defendant admits that Exhibit A purports to be a copy of a loan agreement between Plaintiff and a third party to this lawsuit and states that the document speaks for itself. Defendant objects to Plaintiff's legal arguments and conclusions set forth in Paragraph 5 and therefore denies the same.

6. Defendant is without sufficient knowledge of the allegations contained in Paragraph 6 of the Complaint and therefore they are denied. Paragraph 6 does not contain factual allegations which require a response. To the extent a response is required, Defendant states that the document speaks for itself. Defendant objects to Plaintiff's legal arguments and conclusions set forth in Paragraph 6 and therefore denies the same.

7. Defendant is without sufficient knowledge of the allegations contained in Paragraph 7 of the Complaint and therefore they are denied. Defendant admits that Exhibit B purports to be a copy of a promissory note between Plaintiff and a third party to this lawsuit and states that the document speaks for itself. Defendant objects to Plaintiff's legal arguments and conclusions set forth in Paragraph 7 and therefore denies the same.

8. Defendant is without sufficient knowledge of the allegations contained in Paragraph 8 of the Complaint and therefore they are denied. Defendant admits that Exhibit C

purports to be a copy of a promissory note between Plaintiff and a third party to this lawsuit and states that the document speaks for itself. Defendant objects to Plaintiff's legal arguments and conclusions set forth in Paragraph 8 and therefore denies the same.

9. Defendant is without sufficient knowledge of the allegations contained in Paragraph 9 of the Complaint and therefore they are denied.

10. Defendant denies the allegations contained in Paragraph 10 of the Complaint except that Defendant admits that KKAID was the local architecture firm on the Beach House project. KKAID was the architect of record on the Beach House project for permitting, construction documents, and technical aspects, and Karp was personally involved in services that KKAID was hired to provide with respect to the Beach House project.

## II. Karp's Guaranty

11. Defendant admits that KKAID was the local architecture firm on the Beach House project and that Defendant is a principal of KKAID. Defendant does not know what "*guaranteed certain of Borrower's obligations in connection with the Project*" refers to and therefore denies the remaining allegations set forth in Paragraph 11 of the Complaint.

12. Defendant admits that Plaintiff purports to have attached a copy of a Guaranty as Exhibit D to the Complaint. Defendant states that he does not recall having executed the document attached as Exhibit D and that by looking at the document attached as Exhibit D he does not know and does not believe that it is his signature. Based on the foregoing, Defendant denies the remaining allegations set forth in Paragraph 12 of the Complaint and denies any and all liability and denies that Plaintiff is entitled to any relief. Furthermore, Defendant objects to Plaintiff's legal arguments and conclusions set forth in Paragraph 12 and therefore denies the same.

13. Paragraph 13 does not contain factual allegations which require a response. To the extent a response is required, Defendant states that it admits that Plaintiff purports to attach a Guaranty as Exhibit D to the Complaint. Defendant, however, denies any and all liability and denies that Plaintiff is entitled to any relief. Defendant also objects to Plaintiff's legal arguments and conclusions set forth in Paragraph 13 and therefore denies the same.

### III. Amendment Of The Loan Documents

14. Defendant is without sufficient knowledge of the allegations contained in Paragraph 14 of the Complaint and therefore they are denied. Defendant does not know who "*the parties*" refer to. Defendant admits that Plaintiff attaches a document purporting to be a First Amendment to Loan Documents as Exhibit E to the Complaint. Defendant objects to Plaintiff's legal arguments and conclusions set forth in Paragraph 14 and therefore denies the same.

15. Defendant admits that Plaintiff purports to attach a copy of a Consent of Guarantor as Exhibit F to the Complaint. Defendant states that he does not recall having executed the document attached as Exhibit F and that by looking at the document attached as Exhibit F he does not know and does not believe that it his signature. Based on the foregoing, Defendant denies the remaining allegations set forth in Paragraph 15 of the Complaint and denies any and all liability and denies that Plaintiff is entitled to any relief. Furthermore, Defendant objects to Plaintiff's legal arguments and conclusions set forth in Paragraph 15 and therefore denies the same.

16. Defendant is without sufficient knowledge of the allegations contained in Paragraph 16 of the Complaint and therefore they are denied. Defendant does not know who "*the parties*" refer to. Defendant admits that Plaintiff attaches a document purporting to be a

Second Amendment to Loan Documents as Exhibit G to the Complaint.  Defendant objects to Plaintiff's legal arguments and conclusions set forth in Paragraph 16 and therefore denies the same.

17. Defendant admits that Plaintiff has attached a copy of a Second Consent of Guarantor as Exhibit H to the Complaint.  Defendant states that he does not recall having executed the document attached as Exhibit H and that by looking at the document attached as Exhibit H he does not know and does not believe that it is signature.  Based on the foregoing, Defendant denies the remaining allegations set forth in Paragraph 17 of the Complaint and denies any and all liability and denies that Plaintiff is entitled to any relief.  Furthermore, Defendant objects to Plaintiff's legal arguments and conclusions set forth in Paragraph 17 and therefore denies the same.

## IV. <u>Borrower and Karp Default Under the Loan Documents and Guaranty</u>

18. Defendant is without sufficient knowledge of the allegations contained in Paragraph 18 of the Complaint and therefore they are denied.  Defendant objects to Plaintiff's legal arguments and conclusions set forth in Paragraph 18 and therefore denies the same.

19. Defendant is without sufficient knowledge of the allegations contained in Paragraph 19 of the Complaint and therefore they are denied.

20. Defendant is without sufficient knowledge of the allegations contained in Paragraph 20 of the Complaint and therefore they are denied.

21. Defendant is without sufficient knowledge of the allegations contained in Paragraph 21 of the Complaint and therefore they are denied.  Defendant admits that Plaintiff purports to attach a Mortgage as Exhibit I to the Complaint.

22. Defendant admits that he received the demand letter which is attached as Exhibit J to the Complaint. Defendant denies the remaining allegations set forth in Paragraph 22 of the Complaint and denies any and all liability and denies that Plaintiff is entitled to any relief.

23. Defendant denies the allegations contained in Paragraph 23 of the Complaint and denies any and all liability and denies that Plaintiff is entitled to any relief.

## CAUSE OF ACTION FOR BREACH OF GUARANTY

24. Defendant incorporates by reference the allegations contained in Paragraph 1 through 23 above as fully set forth herein.

25. Defendant denies the allegations contained in Paragraph 25 of the Complaint and denies any and all liability and denies that Plaintiff is entitled to any relief.

26. Defendant is without sufficient knowledge of the allegations contained in Paragraph 26 of the Complaint and they therefore are denied. Defendant denies any and all liability and denies that Plaintiff is entitled to any relief.

27. Defendant is without sufficient knowledge of the allegations contained in Paragraph 27 of the Complaint and they therefore are denied. Defendant denies any and all liability and denies that Plaintiff is entitled to any relief.

28. Defendant denies the allegations contained in Paragraph 28 of the Complaint.

29. Defendant denies the allegations contained in Paragraph 29 of the Complaint.

30. Defendant denies the allegations contained in Paragraph 30 of the Complaint.

## PRAYER FOR RELIEF

Plaintiff's Prayer for Relief does not contain factual allegations which require a response. To the extent a response is required, Defendant denies any and all liability and denies that Plaintiff is entitled to any relief.

## PLAINTIFF'S DEMAND FOR A JURY TRIAL

Plaintiff's Demand For A Jury Trial does not contain factual allegations which require a response. To the extent a response is required, Defendant denies any and all liability and denies that Plaintiff is entitled to any relief.

## FACTUAL ALLEGATIONS

1. Winners, LLC ("Winners") and its subsidiary Beach House Property, LLC ("BHP") (collectively, "Founder") ventured to build a condominium complex, Beach House, located on the property site of the former Beach House Hotel ("Hotel") in Surfside, Florida.

2. Kobi Karp ("Karp") was the local architect of record on the Project. Along with his company Kobi Karp Architecture and Interior Design, Inc. ("KKAID"), Karp was responsible solely for the permitting, construction documents, and technical aspects for the Project. He was never involved in the design, planning, or negotiations for financing and had no interest in Founder.

3. Negotiations to secure acquisition and development financing for the land and the Hotel (collectively "Property") occurred between, among others, Winners, BHP, Henry Rodstein ("Rodstein") and BankFirst.

4. BankFirst is a South Dakota state charted bank that is a subsidiary of Marshall BankFirst Corp. ("MBF"), a bank holding company with at least six wholly owned subsidiaries, including BankFirst. BankFirst, Marshall Bank, N.A. and all the subsidiaries within the Marshall BankFirst Corp. ("Marshall BankFirst Entities") jointly advertise and promote their services without distinction among the individual entities. Notably, Marshall BankFirst highlights that "Marshall BankFirst [is] a dynamic financial services company. . . [which] combines the resources of three institutions: BankFirst (South Dakota), Marshall Bank, N.A., and the Marshall

Group."  The information continues that "[o]ur unique business model allows banks and other financial institutions access to programs and services they generally could not do alone.  For developers, we provide a distinct approach to loan structuring and project finance not found with traditional lenders."

5. This controversy centers upon funding for the Beach House.  At all material times, the parties emphasized and agreed upon the necessity for additional construction financing.  Indeed, as Plaintiff states in its Complaint, the Loan Agreement and two resulting Promissory Notes (A & B) (collectively "Notes") between BankFirst and BHP for $40,630,000 million, were "to retire a wrap mortgage on certain property located in Surfside, Florida, demolish the existing hotel situated on the property, and *develop and construct the "Beach House" condominiums and townhouses*."  Compl. ¶ 5 (emphasis added).

6. As matters developed, all parties understood that the initial funding actually provided by Plaintiff would not be sufficient to construct the Beach House condominium and townhome project ("Project").  Estimates on total development and construction costs for the Project, assessed far in advance of the finalization of the Loan Agreement and Notes, always well exceeded $100 million.

7. After the acquisition of the Property and while finalizing the planning, permitting, and securing of the construction loan, Plaintiff authorized Founder to continue to operate the Hotel, which provided a source of income during the planning and preparation time.

8. Meanwhile, in preparation for construction of the Project, Founder financed many soft costs for the Project, including among other things engineering costs, architecture costs, permitting costs, and estimates for construction (including a guaranteed maximum construction price necessary prior to approval of a construction loan).

9. Such costs were financed through cash flow received from the operation of the Hotel, development draw requests from the loan approved by BankFirst, as well as cash equity from Winners investors. For this reason, Founder recognized the necessity for operating the Hotel and would only agree to its demolition upon completion of the following: (a) achieving pre-sales; (b) obtaining a building permit; and (c) funding of the construction loan. BankFirst was fully aware of these realities which were necessary and manifest preconditions to a demolition that would eliminate valuable improvements and virtually erase any further source of generating income.

10. As of July 2007, all architectural plans were finalized and Founder had secured sufficient presales of units in the condominium (over 60-70% of the planned units were sold and purchase contracts were secured along with non-refundable deposits), had received the requisite permits to commence construction (with the assistance of KKAID) and had received a guaranteed maximum construction price for the Project as well as a schedule of completion.

11. Therefore, to clear the land and commence construction of the Project, Founder liquidated all assets of the Hotel (by selling the furniture, fixtures, and equipment) and demolished it. BankFirst not only knew about these actions but approved them and released the necessary draw of funds to Founder to do so.

12. Unknown to Karp, and undisclosed to him, BankFirst and its affiliates were being investigated by regulatory authorities in or before early 2007. The regulators found weaknesses in asset quality, credit administration, management, and risk management by BankFirst and its affiliate. On August 2, 2007, BankFirst and Marshall BankFirst Corporation entered into an agreement with the Federal Reserve Bank of Minneapolis and the South Dakota Department of Revenue and Regulation to address the weaknesses previously found by the regulators (the

"Agreement").  Accordingly, BankFirst and Marshall agreed to refrain from taking any action that would result in an increase in the dollar value of their loan portfolio above the aggregate dollar value balance as of the close of business on March 12, 2007, plus legally binding commitments as of March 12, 2007.  Beyond the requirement of prior regulatory approval for additional lending, the Agreement had other requirements (*e.g.*, rewriting its policies and lending plans, intensified board oversight, creating a new capital plan, and writing down loan values, among others) effectively limiting and restricting the ability of them to write new loans.

13. BankFirst and affiliates never disclosed the regulatory investigation or the Agreement with the federal and state regulators, and never revealed the significant limitation on their lending practices to Karp.  Such omissions were and are highly material because the regulatory pressures engulfing BankFirst and affiliates have transformed their character and capacity in critical respects.  Ironically this regulatory investigation occurred at or around the same time that BankFirst required the execution of the First Amendment to Loan Documents. Defendant submits that perhaps BankFirst was not permitted to enter into the First Amendment to Loan Documents and violated its Agreement with the regulators. At a minimum, BankFirst should have disclosed the existence of the Agreement to the obligors.

14. Notably, on July 17, 2009, BankFirst was closed by the South Dakota Division of Banking, which appointed the Federal Deposit Insurance Corporation as receiver (the "***Receivership***").  The Receivership is indicative that BankFirst was not complying with proper banking regulations and in all likelihood should not have entered into the First Amendment to Loan Documents.

15. Apparently BankFirst and affiliates determined not to take any steps to protect or maintain or market the collateral even though a prudent commercial banker would take steps

necessary to address them.  For example, BankFirst should have never made the $40 million loan to Winners' in the first place.  The principals of Winners were inexperienced developers and were not qualified for such a loan.  Furthermore, BankFirst did not conduct proper due diligence with respect to the guarantors to ensure that their financial statements were such that they should be guarantors on a loan of this magnitude.

16. BankFirst also violated its own policies and the covenants in the loan by failing to ensure that Winners used the loan proceeds in an approved manner.  Section 2.02 of the Loan Agreement provides how the proceeds of the loan were to be used.  For example, the equity from the investors in the Project, plus the loan amount itself, totals approximately $56 million.  If the acquisition cost of $26 million is subtracted, that leaves $30 million spent on other expenses.  Even if three (3) years of interest is subtracted ($7 million), that leaves $23 million, which is far more than reasonable for preconstruction costs.[1]  Where did the rest of the money go and why did BankFirst allow the funds to be squandered?

17. BankFirst should have never permitted the demolition of the Hotel without ensuring that a commitment for proper construction financing was in place.  BankFirst's failure to do so was gross negligence.  Clearly, it is not a prudent banking practice to allow and pay for demolition of its valuable collateral without a commitment for construction financing to take out the existing loan and construct the planned improvements.  No prudent bank would allow the demolition of valuable improvements simply to let land lie vacant and useless.

18. By entering into a Loan Agreement to demolish property and construct condominiums, (*see* Compl. ¶ 5), followed by it subsequent actions outlined above, BankFirst

---

[1] BankFirst has, to date, collected millions of dollars in interest payments and fees related to the Loan Agreement and Notes from both interest reserves within the Loan Agreement and Notes as well as from Founder's own cash funds.

has been a substantial factor in causing the Project to be derailed and become unusable. Stated bluntly, the Project has been effectively destroyed. BankFirst's complicity in the demolition and liquidation of assets of the Hotel constituted a drastic impairment of its own collateral that was compounded dramatically by its egregious misconduct in failing to assure that a commitment for construction financing was in place before the demolition in July 2007. As a result, BankFirst is estopped from, and may not benefit from its own wrong, by attempting to collect a guaranty alleged to be due from Karp when it was involved with the demise of the actual construction and completion of the Project.

19. Moreover, by approving the demolition of the Hotel and rejecting all bids on the Property, BankFirst acted, and continues to act, in bad faith and prevented other parties from performing any obligations to pay the indebtedness due under the mortgage loan.

20. Additionally, since Winners' and BHP's inability to secure a construction loan and their subsequent filing for bankruptcy, numerous buyers have shown serious interest in purchasing the Property. BankFirst has thus far rejected all potential bids or offers, failing to act reasonably in attempt to mitigate any potential loss or harm of which it speaks.

21. Moreover, no purchaser appeared at the Court ordered sale. Therefore, BankFirst will reportedly be acquiring the property through a credit bid.

22. BankFirst is reportedly liquidating collateral without fairly considering all potential bids or offers. Any claim it has to recover under any notes or under guaranties must be released or reduced by the fair market value of the property.

23. Karp's personal involvement in the foregoing was limited and at no time did he consent to any of the wrongful conditions of Plaintiff described above.

24. Furthermore, BankFirst did not provide Karp with any consideration or value for his alleged execution of the guaranty and related documents. Karp, who BankFirst knew was not an investor, was allegedly guaranteeing a debt of $40 million but what was he to receive from BankFirst in return? A plain reading of the documents attached to the Complaint reveal nothing.

25. Rodstein was a mortgage broker and an agent of BankFirst. BankFirst and Rodstein were involved in numerous deals together whereby Rodstein would be the mortgage broker for BankFirst.

26. At all times Karp reasonably believed that Rodstein was an agent of BankFirst and that Rodstein was acting on behalf of BankFirst and within the scope of his authority. Karp states that at this time he does not recall having executed the guaranty and related documents attached to the Complaint and that by looking at the documents attached the Complaint he does not know and does not believe that it his signature. Karp, however, understood that a loan was being made by BankFirst and that he was being asked to guaranty such loan. Karp relied on the representations made to him by Rodstein, as BankFirst's agent relating to the loan. Karp was advised and assured by Rodstein that Karp would have no exposure with respect to the guaranty because BankFirst had assured that it had secured construction financing for the Project before the demolition of the Hotel and that at the time of the construction financing the guaranty would be released as the acquisition loan would be repaid. Rodstein knew that these were false statements.

27. To the extent it is determined that Karp did execute a guaranty relating to the Project, it appears that Rodstein made these false statements in order to induce Karp to execute the guaranty and related documents. Karp justifiably relied on these statements by Rodstein, BankFirst's agent, in executing the guaranty and related documents.

LAW OFFICES OF MELAND RUSSIN & BUDWICK, P.A.
3000 WACHOVIA FINANCIAL CENTER, 200 SOUTH BISCAYNE BOULEVARD, MIAMI, FLORIDA  33131 • TELEPHONE (305) 358-6363
{Firm Clients\5307\5307-1\00559647.DOC.}

## **AFFIRMATIVE DEFENSES**[2]

1. <u>Estoppel</u>. BankFirst is estopped from disregarding its commitments, declaring that the guaranty is past its maturity date, and requiring payment in full of all sums due and owing due to its own negligence in allowing the impairment of its collateral without ensuring that a commitment for construction financing was in place. BankFirst is further estopped from enforcing the Loan Agreement and related documents (including the guaranty if it is deemed executed by Karp) because BankFirst failed to conduct proper due diligence relating to the borrowers and guarantors on the loan and because BankFirst failed to ensure that the borrowers complied with the terms of the Loan Agreement and how the funds were being used.

2. <u>Breach of Implied Covenants</u>. By its actions, as alleged above, BankFirst breached its implied covenant of good faith and fair dealing in the approval of the demolition of the Hotel prior to ensuring that a commitment for construction financing was in place. BankFirst acted in bad faith in its approval of the demolition of the Hotel and its refusal to consider or allow the sale of the Property to serious bidders, thereby disregarding its commitments, duties to Karp, and effectively preventing any performance by the alleged obligors.

3. <u>Unclean hands</u>. By its actions as alleged above, BankFirst has unclean hands, and thus is barred from recovering for breach of guaranty as it requests in the Complaint.

4. <u>Waiver</u>. By its action, as alleged above, BankFirst waived the right to declare Karp in default, or to enforce the Guaranty agreement.

---

[2] Notwithstanding repeated requests, Plaintiff has refused to provide Defendant with access to the entire loan file, including, but not limited to, the personal financial statements of Defendant allegedly relied upon by Plaintiff. Upon information and belief, a review of the entire loan file may resolve some of the affirmative defenses or allow further defenses to be uncovered.

5. <u>Breach of Fiduciary Duty</u>.  By its actions above, BankFirst breached its fiduciary duty to Karp.

6. <u>Failure to mitigate damages</u>.  To the extent BankFirst has suffered any alleged loss or harm, by its actions, as alleged above, BankFirst has failed to act reasonably to mitigate any such loss or harm, which precludes it from seeking relief in this case.

7. <u>Impairment of Collateral</u>.  Any claim against Karp must be discharged to the extent of the value of the collateral was impaired due to BankFirst's gross negligence with respect to the demolition of the Hotel and liquidation of assets and failure to fairly consider potential bids or offers to purchase the Property.

8. <u>Partial or Full Payment</u>.  Any claim is reduced in whole or in part by the fair market value of the property which Plaintiff, as a secured lender, has taken steps to effectively foreclose and liquidate upon the assets.  Furthermore, BankFirst will be acquiring the Property through a credit bid.  Therefore, the obligations pursuant to the Loan Agreement will be either partially or completely satisfied.

9. <u>Fraudulent Inducement</u>.  To the extent Karp actually guaranteed the loan, BankFirst, through its agent, Rodstein, fraudulently induced Karp to execute the guaranty.  BankFirst knew, or should have known, that the statements being made by Rodstein, were within Rodstein's authority and were false and that Karp reasonably relied on these statements.

10. <u>Lack of Consideration</u>.  To the extent Karp actually guaranteed the loan, BankFirst, knowing Karp was not an investor, did not provide Karp with valuable or sufficient consideration for his alleged execution of the $40 million guaranty.

11. <u>The Waiver Provisions In The Guaranty Documents Are Unenforceable</u>.  BankFirst's position that Karp has waived any defenses to enforcement of the guaranty is

inapplicable because, as explained in detail above, BankFirst has committed gross negligence. A party cannot waive his or her rights to assert defenses of another party's future negligent or fraudulent acts. Here, the last guaranty document was purportedly executed on June 26, 2007. Permitting demolition of the Hotel without ensuring that a commitment for construction financing was in place was gross negligence on the part of BankFirst. The demolition occurred in July, 2007, after the execution of the last guaranty document. Therefore, any waiver of Karp of defenses with respect to the guaranty documents are inapplicable.

WHEREFORE, Defendant denies any and all liability, denies that Plaintiff is entitled to relief, requests that this Court award Defendant his costs, and provide for such other and further relief as the Court deems just and proper.

DATED this 28th day of July, 2009.

Respectfully submitted,

*s/Peter D. Russin*
Peter D. Russin, Esquire
Florida Bar Number:  076502
E-Mail:  prussin@melandrussin.com
Cheryl E. Zuckerman, Esquire
Florida Bar Number:  176583
E-Mail:  czuckerman@melandrussin.com
MELAND RUSSIN & BUDWICK, P.A.
3000 Wachovia Financial Center
200 South Biscayne Boulevard
Miami, Florida  33131
Telephone:  (305) 358-6363
Facsimile:  (305) 358-1221

*Attorneys for Defendant*

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on July 28, 2009, I electronically filed the foregoing Amended Answer and Affirmative Defenses with the Clerk of the Court using CM/ECF.  I further certify that the foregoing document is being served this day on HAROLD D. MOOREFIELD, JR., ESQUIRE and ALAN HAROLD FEIN, ESQUIRE, Counsel for Plaintiff, STEARNS WEAVER MILLER WEISSLER ALHADEFF & SITTERSON, P.A., Museum Tower, Suite 2200, 150 West Flagler Street, Miami, Florida 33130;  JAMES B. SOWKA, ESQUIRE, Counsel for Plaintiff, SEYFARTH SHAW LLP, 131 S. Dearborn Street, Suite 2400, Chicago, Illinois 60603;  and ERIKA C. BIRG, ESQUIRE, Counsel for Plaintiff, SEYFARTH SHAW LLP, 1545 Peachtree Street, Suite 700, Atlanta, Georgia 30309., via transmission of Notices of Electronic Filing generated by CM/ECF.

*s/Cheryl E. Zuckerman*
Cheryl E. Zuckerman, Esquire
Florida Bar Number:  176583
E-Mail:  czuckerman@melandrussin.com